Steven L. Rinehart (USB #11494)
**WESTERN IP**
2912 W. Executive Parkway, Ste. 240
Lehi, UT 84043
Telephone: (888) 941-9933
Email: steve@utahpatentattorneys.com
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| NOT APPLICABLE ENGINEERING, LLC D/B/A PAWPULAR PRINTS, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SEAN PARKER, an individual; and DOES 1 through 5,<br><br>Defendants. | Case No. 2:26-cv-1082<br><br>**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS, INJURIOUS FALSEHOOD, AND RELATED CLAIMS**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge: ____________________ |

COMES NOW Plaintiff Not Applicable Engineering, LLC d/b/a Pawpular Prints ("Pawpular" or "Plaintiff"), by and through counsel undersigned, and for causes of action against Defendant Sean Parker and Does 1 through 5 hereby alleges and claims as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Not Applicable Engineering, LLC, which does business as Pawpular Prints, is a limited liability company organized under the laws of the State of Utah, with its principal place of business in Salt Lake County, Utah. Pawpular is owned and operated by Nick Arbanas. Pawpular designs original three-dimensional models for 3D printing and distributes them as digital design files through online platforms including Patreon and Thangs and through its own online store.

2. Defendant Sean Parker ("Parker") is an individual who, upon information and belief, resides in Forked River, New Jersey. Parker is the named inventor and applicant of United States Design Patent No. D1,053,273. Parker holds himself out as the "President" of a business he calls "Bounce House Fidget," and operates, or causes to be operated, the website bouncehousekeychain.com.

3. Parker has communicated with Plaintiff and with at least one of Plaintiff's licensees through at least three email addresses -- bouncehousekeychain@gmail.com, seanparker1005@yahoo.com, and atlanta8420@yahoo.com -- and through the Instagram account of a business identified as Jersey Shore Inflatable Rentals (@shoreinflatables). The telephone number Parker supplied when he contacted Plaintiff through its online store on October 16, 2026, (848) 207-9283, is the telephone number published by Jersey Shore Inflatable Rentals in that account's automated reply to Plaintiff.

4. Defendants Does 1 through 5 are persons and entities whose identities are presently unknown to Plaintiff, including any entity through which Parker does business as "Bounce House Fidget," "Bounce House Keychain," or "Jersey Shore Inflatable Rentals," and any person who has acted in concert with Parker in the conduct alleged herein. Plaintiff will seek leave to amend this Complaint to state their true names when they are ascertained.

5. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.

6. In the alternative, this Court has jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of the State of Utah, each of its members being a citizen of Utah. Parker is a citizen of the State of New Jersey. The amount in controversy exceeds $75,000, exclusive of interest and costs; among other things, Parker has represented in writing that he has opened an insurance claim against Plaintiff "for damages of 250k."

7. This Court has personal jurisdiction over Parker. Parker purposefully directed a sustained campaign of patent and trademark enforcement activity at a Utah business. He initiated contact with Plaintiff in Utah through Instagram; sent written demands to Plaintiff in Utah asserting infringement, demanding a license, and setting a deadline for response; continued to press those demands after Plaintiff rejected them; and, when Plaintiff would not pay, contacted Plaintiff's licensee, and upon information and belief other licensees, and submitted a further written demand through Plaintiff's own online storefront, for the purpose of cutting off the licensing revenue that Plaintiff earns in Utah, knowing that the brunt of the resulting harm would be suffered by Plaintiff in Utah. *See Trimble Inc. v. PerdieMobile LLC*, 997 F.3d 1147 (Fed. Cir. 2021); *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368 (Fed. Cir. 2022); *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *Dudnikov v. Chase Manhattan Corp.*, 514 F.3d 1063, 1072–77 (10th Cir. 2008). Jurisdiction also exists pursuant to Utah Code Ann. §§ 78B-3-201(3) and 78B-3-205.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this district, including Plaintiff's receipt of Parker's demands, and because the injury to Plaintiff's business and licensing relationships is suffered here.

## GENERAL ALLEGATIONS

### Introduction

9. This case concerns a design patent asserted as if it were a patent on an idea. Parker holds a design patent on one ornamental design for a fidget toy shaped like a bounce house. He has told Plaintiff in writing that he owns "the walls, entrence, mattress," and that "all the other parts are needed to make a bounce house toy fall under my design." He has told Plaintiff's licensee that he and his business "are the sole owners of the concept." A design patent confers no such right.

10. Plaintiff's design does not look like Parker's. When Plaintiff, after review by patent counsel, rejected Parker's claim and invited him to identify any claimed ornamental feature present in Plaintiff's product, Parker identified none. He turned instead to Plaintiff's licensee, telling it that Plaintiff "stole our design," that Plaintiff "is being sued," that Plaintiff "has asked to be sued instead," and that he owns a trademark in the phrase "Bounce House Fidget," and threatening that the licensee would be named in a lawsuit unless it stopped selling Plaintiff's product within five business days. None of those statements of fact is true.

11. Plaintiff seeks a declaration that neither it nor its licensees infringe Parker's patent or any trademark right of Parker, and relief from Parker's campaign of false statements to the businesses on which Plaintiff's licensing depends.[1]

---

[1] Quotations from Parker's communications in this Complaint are reproduced as written, without correction of spelling or grammar. Times of day stated in this Complaint are as displayed in the copy of the communication in Plaintiff's possession, and the communications attached as exhibits do not all display times in the same time zone.

**Plaintiff and the Bouncy Blast Design**

12. Pawpular is a designer of original 3D-printable models, including fidget toys and keychains. Pawpular earns revenue by selling digital design files to consumers for personal use, through membership subscriptions, and by granting commercial licenses to independent makers ("Licensees") who print physical units from Pawpular's files and sell them.

13. On or about March 25, 2026, Pawpular released a design titled "Bouncy Blast Multi-Pack" (the "Bouncy Blast Design"), first on Patreon and thereafter on Thangs. The Bouncy Blast Design is a keychain-sized clicker fidget, which houses a mechanical keyboard switch, styled after an inflatable play castle. It is offered in three castle styles, each in two configurations. True and correct line drawings depicting the Bouncy Blast Design, together with a true and correct copy of the first page of Pawpular's online design directory, on which the Bouncy Blast Design is listed, are attached hereto as **Exhibit A**.

14. This image depicts Pawpular's Bouncy Blast Design:



15. Pawpular created the Bouncy Blast Design independently. Before July 10, 2026, Pawpular had no knowledge of Parker, of his products, or of the '273 Patent described below.

16. Consumers may purchase the digital files of the Bouncy Blast Design for personal use for a one-time price of $3.00, or obtain them as one of more than 150 designs available to Pawpular's subscribing members. Persons who wish to sell physical prints of Pawpular's designs must obtain a commercial license from Pawpular.

17. Pawpular does not itself manufacture or sell physical units of the Bouncy Blast Design. Physical units are printed by consumers for their own use and by Licensees for sale.

18. Pawpular has approximately 2,050 active Licensees. Licensees, including Rabchilla Creations LLC ("Rabchilla"), sell physical units printed from Pawpular's designs through their own websites, through online marketplaces including Etsy, and at physical locations such as markets and storefronts. Pawpular's commercial licenses, and the continued willingness of Licensees to make and sell products from Pawpular's designs, are a material source of Pawpular's revenue and goodwill.

**The '273 Patent**

19. United States Design Patent No. D1,053,273, titled "Fidget Toy" (the "'273 Patent"), issued on December 3, 2024, from Application No. 29/940,018, filed April 30, 2024. Parker is the named inventor and applicant. A true and correct copy of the '273 Patent is attached hereto as **Exhibit B**.

20. The '273 Patent contains a single claim: "The ornamental design for a fidget toy, as shown and described." The design is shown in five figures: a top front perspective view (Fig. 1), a front elevation view (Fig. 2), a rear elevation view (Fig. 3), a left-side elevation view, the right-side elevation view being a mirror image thereof (Fig. 4), and a top plan view (Fig. 5).

21. The '273 Patent states that "[t]he evenly spaced broken lines shown in the drawings depict portions of the fidget toy that form no part of the claimed design," and that "[t]he dash-dot-dash broken lines shown in the drawings denote the boundaries of the claim and form no part thereof."

22. In every figure, the roof of the toy and the conical turrets that rise from it are drawn in evenly spaced broken lines; in the elevation views, they appear above a dash-dot-dash boundary line running along the top of the walls. Four turrets are shown in Figs. 1 and 5. The roof and turrets -- the elements of the drawing most suggestive of a castle -- are therefore expressly excluded from the claimed design.

23. The claimed design is accordingly limited to the body of the toy shown in solid lines, which consists of: (a) a box-like body, rectangular in plan and wider than it is deep, with flat, smooth, vertical walls of uniform height joined at softly rounded vertical corners; (b) on each side wall and on the rear wall, a single large recessed panel with rounded corners and a beveled border, occupying most of the wall; (c) on the front wall, an elongated horizontal recessed panel in the lower portion of the wall, interrupted at the center of its lower edge by a semicircular arch; (d) below that arch, a short entry step projecting forward from the base, with sides that curve inward and then flare outward; and (e) a single rounded bolster encircling the base of the body, interrupted at the front by the entry step, and projecting outward beyond the walls, from within which the walls rise. Ex. B, Figs. 1–5.



24. The ’273 Patent does not claim the idea of a fidget toy shaped like a bounce house, and it does not claim walls, an entrance, a floor, a “mattress,” or an inflatable-looking base as such. It claims one particular ornamental appearance, as shown in its drawings.

**The Bouncy Blast Design Does Not Embody the Claimed Design**

25. The Bouncy Blast Design differs from the claimed design in each of its principal features and in its overall visual impression. Representative views of the claimed design and of the Bouncy Blast Design are reproduced below.



*'273 Patent, Fig. 1 (claimed design in solid lines; broken-line portions disclaimed)*



*Bouncy Blast Design, Castle A (Ex. A)*



*'273 Patent, Fig. 2 (front elevation)*



*Bouncy Blast Design, Castle A, front (Ex. A)*

26. *Corner towers.* Each style of the Bouncy Blast Design has four full-height columnar towers, one at each corner -- cylindrical in two styles and spiral-twisted in the third -- rising from the base and capped above the top of the walls with conical, crenellated, or domed tops. The towers dominate the appearance of the product from every angle. The claimed

design has no towers; its corners are the rounded edges of a box. The only tower-like elements shown in the '273 Patent -- the conical turrets atop the roof -- are disclaimed.

27. *Walls.* In the Bouncy Blast Design, the walls are set between the towers and are divided by horizontal, rounded tubular rails spanning from tower to tower, including a rail capping the top of each wall; in one style the walls consist entirely of stacked horizontal tubes. The claimed design has flat, uninterrupted walls running corner to corner, each bearing a single large recessed panel with a beveled border occupying most of the wall. No wall of the Bouncy Blast Design bears such a panel.

28. *Entrance.* The front of the Bouncy Blast Design is dominated by a large header, arched or peaked depending on the style, that spans the full width between the front towers at the top of the front wall and frames a doorway set beneath it. The claimed design has no header; its front bears only a low horizontal recessed panel with a small semicircular arch at the center of its lower edge.

29. *Base.* The Bouncy Blast Design rests on a broad, flat, multi-tiered deck, formed of two stacked, rounded slabs with horizontal grooves, which extends outward beyond the towers around the perimeter of the castle. The claimed design rests on a single rounded bolster closely encircling the body.

30. *Entry feature.* One configuration of each Bouncy Blast style has a long inclined slide with raised side rails, descending from the doorway past the edge of the base. The other configuration has no projecting entry feature at all. Neither configuration has the short, flared, projecting entry step of the claimed design.

31. *Proportions.* Each of the three Bouncy Blast styles is square in plan. The claimed design is rectangular in plan, approximately four units wide by three deep.

32. The only attributes the two designs share are generic attributes of any toy depicting an inflatable bounce house—that it has walls, an entrance, a floor, and a cushioned base—described at a level of abstraction that the ’273 Patent does not, and as a matter of law cannot, claim.

**Parker’s July 2026 Demands**

33. On Friday, July 10, 2026, Parker contacted Pawpular through the Instagram account of Jersey Shore Inflatable Rentals, stating that he was “reaching out about your Bounce House blast design,” and asking for an email address or telephone number. A true and correct copy of the Instagram exchange is attached hereto as **Exhibit C**.

34. The same day, Parker sent an email from bouncehousekeychain@gmail.com to Pawpular’s support address (the “July 10 Demand”). In it, Parker stated that he was “the patent holder for the ornimental design of bounce house as a fidget toy”; that “dozens of vendors” were “selling my patented product without approval, but through your license”; and that he had notified his insurance carrier, “As I have multiple policies protecting this toy.” He stated that he was open to a licensing agreement, that “[i]f we cant figure something out I would have to file a claim with my carrier to pursue legal action,” and demanded: “Please reach out by Monday.” That Monday was July 13, 2026, one business day later. A true and correct copy of the July 10 and 11, 2026 email exchange is attached hereto as **Exhibit D**.

35. The July 10 Demand did not identify the ’273 Patent by number, did not identify any product of Pawpular other than by implication, and did not identify any feature of any Pawpular product said to correspond to any feature of the claimed design. It referred Pawpular to Parker’s website, stating that “[t]he patent number is noted” there. It was not,

as Pawpular advised Parker the same day. Upon information and belief, Parker's website states that his product is "Patented" but does not identify any patent by number.

36. Kelly Arbanas responded the same afternoon, asking Parker to provide the patent number, "as it is not readily available on the website you provided." Ex. D.

37. Also on July 10, 2026, Parker sent a further message through Instagram, stating: "I own the walls, entrence, mattress. Basically my patent has a variable roof all the other parts are needed to make a bounce house toy fall under my design." He stated that he would "prefer to do a license agreement," and that "Otherwise I would have to file an infringment claim." Ex. C.

38. Pawpular responded that its design is a 3D printed object, not a foam object like Parker's. Parker replied: "We didnt patent the material. Its the look. Look at the patent." Ex. C. Parker thereby acknowledged that his patent protects only a particular appearance.

39. On July 11, 2026, Parker emailed a photograph of the first page of the '273 Patent, stating: "We invented the bounce house as a fidget toy, we own the ornimental design." Nick Arbanas responded that Pawpular had forwarded the information to counsel and would respond by the end of the following week. Ex. D.

40. On July 17, 2026, Pawpular responded in writing (the "July 17 Response"). Pawpular informed Parker that it had had his claim reviewed by patent counsel, who had concluded that Pawpular's product does not infringe the '273 Patent. Pawpular explained that a design patent protects only the ornamental design claimed and depicted in the patent drawings, and does not extend to the general concept of a fidget toy, inflatable walls, an inflatable mattress, an entrance, or all products incorporating those general features. Pawpular invited Parker, if he contended otherwise, to identify the specific claimed ornamental features he

believed were present in Pawpular's product and to explain the basis for his allegation. A true and correct copy of the July 17 Response is attached hereto as **Exhibit E**.

41. Parker did not identify any claimed ornamental feature present in the Bouncy Blast Design, then or at any time since.

42. On July 20, 2026, Parker instead replied that he had consulted his "patent insurance carrier," that "[t]hey believe theres an infringment," and that he would "open the claim and they will reach out with the official legal notices." He asserted: "We invented the idea, product." He then characterized Pawpular's observation that its product is 3D printed rather than foam as proof of copying: "So it clearly shows the product was copied with idea of changing material to be different. Its the same product a bounce house fidget, our invention." A true and correct copy of Parker's July 20, 2026 email is attached hereto as **Exhibit F**.

43. Pawpular has received no "official legal notices" from any insurance carrier, and no insurance carrier or other person acting for Parker has identified any claimed ornamental feature of the '273 Patent present in the Bouncy Blast Design. Parker did not communicate with Pawpular again between July 20 and October 16, 2026.

**Parker's October 2026 Campaign Against Plaintiff's Licensees**

44. On October 16, 2026, three months after Pawpular's July 17 Response, Parker submitted a message through the contact form of the online shop operated by Pawpular's Licensee Rabchilla, at rabchillacreations.com, using the email address seanparker1005@yahoo.com (the "First Rabchilla Message"). The First Rabchilla Message stated in its entirety:

> Hi Please note: you are using a Trademarked and patented product on your site. Bounce House Fidget is being used and sold on your site without our permission. We are the sole owners of the concept. Your vendor is being sued for refusal to pay any license fees and has

> asked to be sued instead. All their vendors must cease and desist immediately. Further advertisement will bring legal action against Rabchilla Creations

45. The "vendor" referred to in the First Rabchilla Message is Pawpular. A true and correct copy of the First Rabchilla Message, as forwarded by Rabchilla to Pawpular, is attached hereto as **Exhibit G**.

46. Rabchilla responded to Parker that the product on its website was designed by Pawpular and manufactured under an active commercial license from Pawpular, and provided Parker a link to Pawpular's listing of the Bouncy Blast Design.

47. Parker replied to Rabchilla the same day (the "Second Rabchilla Message"), stating, among other things:

> Yes Pawpular prints stole our design. We have a patent on fidget bounce house. We also own the tradmark fidget bounce house. You are using our trademark! "Bounce House Fidget" And there selling our product license without permission. They have been notified and an IP lawsuit is being filed. [...] Etsy is being put on notice all vendors are being shut down. As pawpular prints has refused to cooperate and continues to infringe. If dont comply you will be named in lawsuit as well. We own the trademark and the product design. We are insured for IP infringment and are building our cases against infringers. You are hearby to remove this product within 5 business days or will be named in a claim for damages.

48. Parker signed the Second Rabchilla Message as "President, Bounce House Fidget." A true and correct copy of the Second Rabchilla Message, as forwarded by Rabchilla to Pawpular, is attached hereto as **Exhibit H**.

49. Also on October 16, 2026, Parker submitted a message through the contact form of Pawpular's own online store, giving his name as Sean Parker, his email address as atlanta8420@yahoo.com, and his telephone number as (848) 207-9283 (the "October 16 Store Message"). In it, Parker asserted that Pawpular had "continued to sell such licenses un authorized for 3D printing of our design" and that Pawpular's "vendors are using our

Trademark"; that he was "sending cease and desist to Esty and all vendors carrying product"; that "[w]e are filing a formal lawsuit against pawpular prints for continued IP infringement"; that vendors who did not remove the product "will be named as well for Trademark and IP infringement of registered USPTO property"; and that "[w]e have opened an insurance claim for damages of 250k." A true and correct copy of the October 16 Store Message is attached hereto as **Exhibit I**.

50. None of the First Rabchilla Message, the Second Rabchilla Message, or the October 16 Store Message identified the '273 Patent by number, identified any claim of any patent, or identified any feature of the Bouncy Blast Design said to correspond to any feature of the claimed design.

51. Upon information and belief, Parker has sent, or intends to send, materially similar communications to other Licensees of Pawpular and to Etsy and other online marketplaces through which Licensees sell products made from the Bouncy Blast Design.

**Parker's Statements Are False**

52. Parker's statements that Pawpular "is being sued" and that "an IP lawsuit is being filed" were false when made. No action had been filed against Pawpular by Parker in any court as of October 16, 2026, and none has been filed or served as of the filing of this Complaint.

53. Parker's statement that Pawpular "has asked to be sued instead" was false when made. Pawpular has never asked Parker to sue it. Pawpular declined to pay a license fee for a patent it does not infringe, explained why in writing, and invited Parker to identify any basis for his claim.

54. Parker's statement that "Pawpular prints stole our design" was false when made. Pawpular created the Bouncy Blast Design independently, and the Bouncy Blast Design does not embody the claimed design of the '273 Patent.

55. Parker's statements that Pawpular "continues to infringe," that Pawpular's licenses are "un authorized," and that Pawpular is "selling our product license without permission" were false when made. The Bouncy Blast Design does not infringe the '273 Patent, and Pawpular requires no permission from Parker to license its own design.

56. Parker's statements that he and his business "are the sole owners of the concept" and "own [...] the product design" were false when made. No person owns the concept of a fidget toy shaped like a bounce house, and the '273 Patent claims only a particular ornamental appearance that the Bouncy Blast Design does not share.

57. Parker's statements that he owns "the tradmark fidget bounce house" and "Bounce House Fidget," and that Licensees who did not remove the product would be named in a suit for infringement of "registered USPTO property," were false and misleading when made. Upon information and belief, Parker owned no United States trademark registration, and no pending application, for BOUNCE HOUSE FIDGET, FIDGET BOUNCE HOUSE, or any similar designation on October 16, 2026.

58. On October 23, 2026, one week after the October 16 communications described above, Parker filed United States Trademark Application Serial No. 50177875 to register BOUNCE HOUSE FIDGET and Design, a stylized mark in which the word FIDGET is disclaimed, for goods and services in International Classes 28 and 35. As of October 26, 2026, the application had not been assigned to an examining attorney. A true and correct copy of the USPTO's record of the application is attached hereto as Exhibit J.

59. The phrase "bounce house fidget" is the common descriptive name of a fidget toy shaped like a bounce house. Upon information and belief, Parker's own website uses the phrase in that descriptive sense, describing his product as the "Worlds first ever Bounce House Fidget." Pawpular does not use the phrase to identify its product, which it sells under the name "Bouncy Blast," and, upon information and belief, its Licensees do not use the phrase to identify their products.

60. Parker has never identified the insurance carrier he refers to, any claim number, or any basis for the $250,000 figure stated in the October 16 Store Message.

**Parker Acted in Bad Faith**

61. Parker's assertions of infringement were objectively baseless. No reasonable litigant could realistically expect to establish that an ordinary observer, comparing the Bouncy Blast Design with the claimed design of the '273 Patent, would be deceived into purchasing one supposing it to be the other.

62. Parker knew his assertions were baseless, or made them with reckless disregard for their truth or falsity. Parker knew that his patent protects only an appearance -- "We didnt [sic] patent the material. Its [sic] the look." -- and nonetheless asserted that it covers "the walls, entrence [sic], mattress," "the concept," and "the idea, product." Parker was told in writing on July 17, 2026, after review by patent counsel, why the Bouncy Blast Design does not infringe, and was invited to identify any claimed feature present in it. He identified none.

63. Rather than test his claim, Parker waited three months and then took it to Pawpular's Licensee, adding statements of fact he knew to be false: that Pawpular was being sued, that Pawpular had asked to be sued, and that Pawpular stole his design. Parker made those

statements to induce Licensees, who have no means of evaluating a design patent claim and every incentive to avoid litigation, to stop doing business with Pawpular.

64. Upon information and belief, Parker's purpose is to appropriate for himself the market for 3D-printed bounce house fidget toys. Parker's website invites visitors to "[c]ontact us if like to license for 3d printing," and states that a 3D-printed version of his own product is planned but has no vendor. A true and correct copy of the relevant portions of Parker's website is attached hereto as **Exhibit K**.

65. Parker's demands bear the recognized hallmarks of bad faith patent assertion: save for a photograph of the patent provided on July 11, 2026 at Pawpular's request, they omitted the patent number, and all of them omitted any identification of a claim or of the accused features; they imposed response deadlines of one business day and five business days; they falsely represented that a lawsuit had been or was being filed; they demanded license fees and damages unrelated to any reasonable estimate of value; and they were directed at Pawpular's Licensees after Pawpular had explained in writing why it does not infringe.

**Harm to Plaintiff**

66. Parker's statements were published to Rabchilla and, upon information and belief, to other Licensees and to online marketplaces, each of which is a business with which Pawpular has an existing or prospective economic relationship.

67. As a direct and proximate result of Parker's conduct, Pawpular has suffered, and continues to suffer, injury to its licensing relationships, its reputation among the makers and marketplaces on which its business depends, and its goodwill. Since October 16, 2026, at least one Licensee has contacted Pawpular about Parker's statements, has paused or

removed its listings of the Bouncy Blast Design, and has declined to renew or asked to cancel its license.

68. Parker has stated that he will cause Etsy to shut down "all vendors" of the Bouncy Blast Design and will sue each Licensee that does not remove it. Unless enjoined, Parker's conduct will continue and will cause Pawpular irreparable harm, including the loss of Licensees and marketplace listings, and of goodwill, that cannot be fully measured or compensated in money.

69. Parker's conduct has been willful, malicious, and in bad faith, and manifests a knowing and reckless indifference toward, and disregard of, Pawpular's rights.

**FIRST CAUSE OF ACTION**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. DESIGN PATENT NO. D1,053,273**
**(28 U.S.C. §§ 2201–2202; 35 U.S.C. § 271)**

70. Plaintiff incorporates and re-alleges Paragraphs 1 through 69 above as if fully set forth herein.

71. An actual, substantial, and immediate controversy exists between Pawpular and Parker, of sufficient immediacy and reality to warrant declaratory relief, concerning whether the Bouncy Blast Design infringes the '273 Patent. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Parker has accused Pawpular of infringement in writing on multiple occasions; demanded that Pawpular take a license; represented that he has opened an insurance claim against Pawpular for $250,000; represented that a lawsuit against Pawpular is being filed; and threatened to sue Pawpular's Licensees.

72. A design patent is infringed only if, in the eye of an ordinary observer familiar with the prior art, the accused design is substantially the same as the claimed design, such that the ordinary observer would be deceived into purchasing one supposing it to be the other.

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670, 678 (Fed. Cir. 2008) (en banc). Where the claimed and accused designs are plainly dissimilar, there is no infringement as a matter of law. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015).

73. A design patent protects only the novel, ornamental features of the patented design as shown in its drawings. It does not protect a general design concept, and features disclaimed by broken lines form no part of the claim. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997); *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995).

74. For the reasons alleged in Paragraphs 25 through 32 above, the Bouncy Blast Design, in each of its styles and configurations, is plainly dissimilar to the claimed design of the '273 Patent, and an ordinary observer would not be deceived into purchasing a product embodying the Bouncy Blast Design supposing it to be a product embodying the claimed design.

75. Pawpular has not infringed and does not infringe the '273 Patent, directly or indirectly, by inducement or by contribution, and has not infringed and does not infringe the '273 Patent under 35 U.S.C. § 289, by making, using, selling, offering to sell, importing, distributing, or licensing the Bouncy Blast Design or any digital file embodying it. Pawpular's Licensees and customers do not infringe the '273 Patent by making, using, selling, offering to sell, or importing products made from the Bouncy Blast Design.

76. Pawpular is entitled to a declaration that it, its Licensees, and its customers have not infringed and do not infringe the '273 Patent by reason of the Bouncy Blast Design.

77. This is an exceptional case within the meaning of 35 U.S.C. § 285, and Pawpular is entitled to its reasonable attorney fees.

**SECOND CAUSE OF ACTION**
**DECLARATORY JUDGMENT OF NO TRADEMARK INFRINGEMENT**
**(28 U.S.C. §§ 2201–2202; 15 U.S.C. §§ 1114, 1125(a))**

78. Plaintiff incorporates and re-alleges Paragraphs 1 through 69 above as if fully set forth herein.

79. An actual, substantial, and immediate controversy exists between Pawpular and Parker concerning whether Pawpular, by designing and licensing the Bouncy Blast Design, infringes or contributes to the infringement of any trademark or trade dress right of Parker. Parker has asserted in writing that he owns the trademarks "Bounce House Fidget" and "fidget bounce house" as "registered USPTO property"; that Pawpular's Licensees are "using our Trademark"; that Pawpular is selling licenses "without permission"; and that he will sue for "Trademark and IP infringement."

80. Upon information and belief, Parker owns no federal trademark registration for BOUNCE HOUSE FIDGET, FIDGET BOUNCE HOUSE, or any similar designation, and his only application for any such designation is Serial No. 50177875, which was filed on October 23, 2026, after the statements alleged above, seeks registration of a stylized design mark in which the word FIDGET is disclaimed, and has not been examined.

81. The designations BOUNCE HOUSE FIDGET and FIDGET BOUNCE HOUSE are generic for, or at a minimum merely descriptive of, a fidget toy shaped like a bounce house, and, upon information and belief, have acquired no secondary meaning identifying Parker as the source of any goods. Any use of the phrase by Pawpular or its Licensees to describe

the nature of their goods is a use, otherwise than as a mark, of a descriptive term in good faith to describe the goods, within the meaning of 15 U.S.C. § 1115(b)(4).

82. To the extent Parker claims rights in the appearance of a fidget toy shaped like a bounce house, unregistered product design trade dress is protectable only upon a showing of secondary meaning, *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000), and non-functionality, 15 U.S.C. § 1125(a)(3), neither of which Parker can establish, and the Bouncy Blast Design is not likely to cause confusion with any product of Parker.

83. Pawpular is entitled to a declaration that Pawpular, its Licensees, and its customers have not infringed and do not infringe any trademark or trade dress right of Parker by reason of the Bouncy Blast Design or its name, and that Parker owns no registered trademark in BOUNCE HOUSE FIDGET or FIDGET BOUNCE HOUSE.

**THIRD CAUSE OF ACTION**
**BAD FAITH ASSERTION OF PATENT INFRINGEMENT**
**(Utah Code Ann. § 78B-6-1901 *et seq.*)**

84. Plaintiff incorporates and re-alleges Paragraphs 1 through 69 above as if fully set forth herein.

85. Pawpular is a "target" within the meaning of Utah Code Ann. § 78B-6-1902, being an entity residing in Utah and organized under its laws that received demand letters from Parker. Rabchilla is a customer or distributor of Pawpular within the meaning of that section.

86. Parker is a "sponsor" within the meaning of Utah Code Ann. § 78B-6-1902. The July 10 Demand, Parker's Instagram messages, the July 20, 2026 email, the First Rabchilla Message, the Second Rabchilla Message, and the October 16 Store Message are each a

"demand letter" within the meaning of that section, being written communications asserting that Pawpular has engaged in patent infringement.

87. Parker distributed those demand letters to Pawpular and to Rabchilla, and each includes a bad faith assertion of patent infringement in violation of Utah Code Ann. § 78B-6-1903(1).

88. The factors identified in Utah Code Ann. § 78B-6-1903(2) as indicative of bad faith are present, including that the demand letters: (a) omit the number of the patent asserted (save for the photograph provided on July 11, 2026 at Pawpular's request) and any description of the accused product sufficient to allow Pawpular to assess the merits of the assertion, Parker having never identified any claimed ornamental feature present in the Bouncy Blast Design; (b) falsely assert, by stating that Pawpular "is being sued," that a complaint had been filed against Pawpular when none had; (c) demand a response within an unreasonably short period, namely by the next business day, and demand the removal of Pawpular's product within five business days; (d) contain other false and misleading statements, including those alleged in Paragraphs 52 through 60 above; and (e) assert a claim of infringement that Parker knew, or should have known, to be meritless.

89. Pawpular has been injured by Parker's violations, and is entitled pursuant to Utah Code Ann. § 78B-6-1904(1) to equitable relief, its actual damages, its costs and fees including reasonable attorney fees, and punitive damages in an amount of not more than the greater of $50,000 or three times the total of its damages, costs, and fees.

90. Pawpular is further entitled, upon a finding of a reasonable likelihood that Parker has made a bad faith assertion of patent infringement, to an order pursuant to Utah Code Ann. § 78B-6-1905 requiring Parker to post a bond in an amount equal to a good faith estimate of Pawpular's costs to litigate its claim under Utah Code Ann. §§ 78B-6-1901 to -1905 and

the amounts reasonably likely to be recovered under Utah Code Ann. § 78B-6-1904(1)(b) and (c), not to exceed $250,000.

**FOURTH CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS**

91. Plaintiff incorporates and re-alleges Paragraphs 1 through 69 above as if fully set forth herein.

92. Under Utah law, a claim for intentional interference with economic relations requires that the defendant intentionally interfered with the plaintiff's existing or potential economic relations by improper means, causing injury to the plaintiff. *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553. Improper means include deceit or misrepresentation, threats and other intimidation, unfounded litigation, defamation, and disparaging falsehood. *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982), *overruled in part on other grounds by Eldridge*, 2015 UT 21.

93. Pawpular has existing economic relations with Rabchilla and its other Licensees under commercial licenses for the Bouncy Blast Design, and existing and prospective economic relations with consumers, subscribers, prospective licensees, and the online platforms through which Pawpular and its Licensees market and sell their products.

94. Parker knew of those relations. Rabchilla informed Parker of its commercial license from Pawpular before Parker sent the Second Rabchilla Message, and Parker's own communications acknowledge that he was targeting Pawpular's "vendors" and its "license."

95. Parker intentionally interfered with those relations by improper means, including the false statements of fact and the objectively baseless threats of litigation alleged above, made in

bad faith, for the purpose of inducing Licensees and marketplaces to cease doing business with Pawpular.

96. Plaintiff has suffered injury as a direct and proximate result, in an amount to be proven at trial.

97. Parker's conduct was willful and malicious and manifests a knowing and reckless indifference toward, and disregard of, Plaintiff's rights. Plaintiff is therefore entitled to punitive damages pursuant to Utah Code Ann. § 78B-8-201.

**FIFTH CAUSE OF ACTION**
**INJURIOUS FALSEHOOD (TRADE LIBEL)**

98. Plaintiff incorporates and re-alleges Paragraphs 1 through 69 above as if fully set forth herein.

99. Under Utah law, a defendant is liable for injurious falsehood where it publishes false statements disparaging the plaintiff's property, goods, or business, with malice, causing special damages. *See Bass v. Planned Mgmt. Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988).

100. Parker published to Rabchilla and, upon information and belief, to other Licensees and marketplaces, false statements disparaging Pawpular's goods and business, including that the Bouncy Blast Design was stolen from Parker, that it infringes Parker's patent and trademark, that Pawpular's licenses are unauthorized, that Pawpular is being sued, and that Pawpular has asked to be sued.

101. Parker made those statements with malice, knowing them to be false or with reckless disregard for their truth or falsity, and with the intent to cause Licensees and marketplaces to cease doing business with Pawpular.

102. As a direct and proximate result, Pawpular has suffered special damages, including the license fees and sales attributable to at least one Licensee that, after Parker's statements,

paused or removed its listings of the Bouncy Blast Design and declined to renew or asked to cancel its license, together with such further special damages, including lost license fees, lost sales of the Bouncy Blast Design and other designs, cancelled licenses or subscriptions, and removed listings, as are proven at trial.

103. Parker's conduct was willful and malicious and manifests a knowing and reckless indifference toward, and disregard of, Plaintiff's rights. Plaintiff is therefore entitled to punitive damages pursuant to Utah Code Ann. § 78B-8-201.

**SIXTH CAUSE OF ACTION**
**DEFAMATION**

104. Plaintiff incorporates and re-alleges Paragraphs 1 through 69 above as if fully set forth herein.

105. To state a claim for defamation under Utah law, a plaintiff must show that the defendant published statements concerning the plaintiff that were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage. *West v. Thomson Newspapers*, 872 P.2d 999, 1007–08 (Utah 1994).

106. Parker published to Rabchilla, and upon information and belief to others, statements of fact concerning Pawpular that are false and defamatory, including that "Pawpular prints stole our design," that Pawpular "continues to infringe," that Pawpular is "selling our product license without permission," that Pawpular "is being sued," and that Pawpular "has asked to be sued instead."

107. Those statements charge Pawpular with theft and with unlawful conduct, and impute to Pawpular conduct incompatible with the lawful exercise of its business, and are defamatory *per se*.

108. The statements are not privileged. They were not made in, or in good-faith contemplation of, any judicial proceeding, and the statements that Pawpular was already being sued and had asked to be sued are statements of purported past fact, false when made, that bear no relation to any proceeding Parker in good faith contemplated.

109. Parker published the statements knowing them to be false, or with reckless disregard for their truth or falsity, and at a minimum negligently.

110. Pawpular has been damaged as a direct and proximate result, in an amount to be proven at trial, and is entitled to presumed damages for defamation *per se*, together with punitive damages pursuant to Utah Code Ann. § 78B-8-201.

## SEVENTH CAUSE OF ACTION
## FALSE OR MISLEADING REPRESENTATION OF FACT
## (15 U.S.C. § 1125(a)(1)(B))

111. Plaintiff incorporates and re-alleges Paragraphs 1 through 69 above as if fully set forth herein.

112. Upon information and belief, Parker is engaged in commerce in the sale of fidget toys styled after bounce houses and in the solicitation of licensees to make and sell 3D-printed versions of such toys, and is a competitor of Pawpular in that market.

113. In commercial communications disseminated to Pawpular's Licensees and, upon information and belief, to online marketplaces and other members of the relevant purchasing public, as part of an organized campaign to cause "all vendors" of the Bouncy Blast Design to cease selling it, Parker made false and misleading representations of fact concerning the nature, characteristics, and qualities of Pawpular's goods and commercial activities, including that the Bouncy Blast Design was stolen from Parker and infringes his

patent and his trademark, that Pawpular's licenses are unauthorized, and that Pawpular is being sued.

114. Those representations were literally false, or in the alternative were misleading and deceived or had the tendency to deceive their recipients, and were material to the recipients' decisions whether to continue to make, sell, and license products from the Bouncy Blast Design.

115. To the extent Parker's representations concern the '273 Patent, they were made in bad faith, being objectively baseless and made with knowledge of or reckless disregard for their falsity. *See Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353–54 (Fed. Cir. 1999); *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374–77 (Fed. Cir. 2004).

116. Pawpular has been and is likely to be injured as a direct and proximate result, by diversion of licensees and sales and by injury to its goodwill, and is entitled to injunctive relief under 15 U.S.C. § 1116 and to damages, Parker's profits, and costs under 15 U.S.C. § 1117(a). This is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

**EIGHTH CAUSE OF ACTION**
**DECEPTIVE TRADE PRACTICES**
**(Utah Truth in Advertising Act, Utah Code Ann. § 13-11a-1 *et seq.*)**

117. Plaintiff incorporates and re-alleges Paragraphs 1 through 69 above as if fully set forth herein.

118. In the course of his business, Parker disparaged the goods, services, and business of Pawpular by false and misleading representations of fact, in violation of Utah Code Ann. § 13-11a-3(1)(h).

119. Pawpular has been injured by Parker's violations and is entitled under Utah Code Ann. § 13-11a-4(2) to its actual damages or $2,000, whichever is greater, together with its costs and reasonable attorney fees, and, following compliance with Utah Code Ann. § 13-11a-4(5), to an injunction against continuation of the violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

120. For a declaration that Pawpular, its Licensees, and its customers have not infringed and do not infringe U.S. Design Patent No. D1,053,273, directly or indirectly, by reason of the Bouncy Blast Design or any digital file embodying it;

121. For a declaration that Pawpular, its Licensees, and its customers have not infringed and do not infringe any trademark or trade dress right of Parker by reason of the Bouncy Blast Design or its name, and that Parker owns no registered trademark in BOUNCE HOUSE FIDGET or FIDGET BOUNCE HOUSE;

122. That the Court issue a temporary restraining order and preliminary and permanent injunctions enjoining Parker, and all persons in active concert or participation with him who receive actual notice of the order, from (a) representing to any Licensee, customer, or prospective licensee of Pawpular, or to any online marketplace or platform, that the Bouncy Blast Design or any product made from it infringes the '273 Patent or any trademark or trade dress right of Parker; (b) representing that Pawpular stole any design, that Pawpular is being or has been sued, that Pawpular has asked to be sued, or that Parker owns a registered trademark in BOUNCE HOUSE FIDGET or FIDGET BOUNCE HOUSE; and (c) submitting any intellectual property complaint, takedown notice, or similar report to

Etsy or any other online marketplace or platform directed at any listing of the Bouncy Blast Design or any product made from it;

123. That Parker be ordered to transmit, within seven days of the Court's order, a written retraction, in a form approved by the Court, to each person to whom he has made any of the statements described in this Complaint, and to withdraw any intellectual property complaint or takedown notice he has submitted concerning the Bouncy Blast Design;

124. That Parker be ordered to post a bond pursuant to Utah Code Ann. § 78B-6-1905;

125. For Plaintiff's actual and special damages, in an amount to be proven at trial;

126. For Parker's profits, Plaintiff's damages, and the costs of this action pursuant to 15 U.S.C. § 1117(a);

127. For punitive damages pursuant to Utah Code Ann. §§ 78B-6-1904(1) and 78B-8-201;

128. For statutory damages pursuant to Utah Code Ann. § 13-11a-4(2);

129. That the Court find this to be an exceptional case and award Plaintiff its reasonable attorney fees pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117(a), and award Plaintiff its reasonable attorney fees and costs pursuant to Utah Code Ann. §§ 78B-6-1904(1) and 13-11a-4(2);

130. For pre-judgment and post-judgment interest; and

131. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b).

DATED AND SIGNED this 30th day of October, 2026.

/s/ Steven L. Rinehart
STEVEN L. RINEHART
*Attorney for Plaintiff*

## VERIFICATION

I, Nick Arbanas, declare as follows: I am an owner of Plaintiff Not Applicable Engineering, LLC, which does business as Pawpular Prints, and am authorized to make this verification on its behalf. I have read the foregoing Complaint. The factual allegations of the Complaint are true of my own personal knowledge, or are based upon records and communications of Plaintiff kept and received in the ordinary course of its business, which I believe to be accurate, except as to those matters alleged upon information and belief, and as to those matters I believe them to be true. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on October 28, 2026, at Salt Lake City, Utah.

NICK ARBANAS